

ORIGINAL
FILED IN CLERK'S OFFICE
D.C. Atlanta

AUG 2 2 2005

LUTHER D. THOMAS, Clerk

Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

LEFT, INC. d/b/a TALENT ZOO,          )
                                       )
        Plaintiff,                     )          CIVIL ACTION FILE
                                       )
v.                                     )          NO. 1 05-CV 2185
                                       )
JOBSTER, INC.,                         )
                                       )
        Defendant.                     )                 JTC

### VERIFIED COMPLAINT

Plaintiff Left, Inc., d/b/a Talent Zoo ("Talent Zoo") files this Verified

Complaint against Defendant Jobster, Inc. ("Jobster") for federal service

mark infringement in violation of Section 32 of the Lanham Act (15 U.S.C.

§ 1114); false description and false designation of origin in violation of

Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); federal service mark

dilution in violation of Section 43(c) of the Lanham Act (15 U.S.C.

§ 1125(c)); common law trademark infringement; violation of the Georgia

Deceptive Trade Practices Act (O.C.G.A. § 10-1-370 *et. seq.*); and Georgia

service mark dilution in violation of O.C.G.A. § 10-1-451(b).

## Parties, Jurisdiction, and Venue

### 1.

Talent Zoo is the premier job search, placement and recruiting firm serving the advertising, marketing, and public relations fields.

### 2.

Talent Zoo's business is international in scope.

### 3.

Started in Atlanta, Georgia, Talent Zoo is a Georgia corporation with a principal place of business at 812 Lambert Drive, N.E., Studio C, Atlanta, Georgia 30324.

### 4.

Defendant is a Delaware corporation with a principal place of business at 206 1st Ave. S., Suite 300, Seattle, Washington 98104.

### 5.

Defendant does business in Georgia.

### 6.

Defendant does business in this judicial district.

7.

Service may be made upon Defendant through its registered agent for service of process, National Registered Agents, Inc., at 1780 Barnes Blvd. SW, Building G, Tumwater, Washington 98512-0410.

8.

Talent Zoo and Jobster each engage in the business of helping individuals identify employment opportunities.

9.

Talent Zoo also recruits individuals for positions primarily in the fields of advertising, marketing, and public relations, and its website has developed into a forum for discussion of trends, events, and employment issues in these fields.

10.

This Court has subject matter jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338.

11.

This Court has personal jurisdiction over Jobster.

12.

Venue is proper in this district under 28 U.S.C. § 1391(b).

## Factual Background
## The Creation of Talent Zoo

13.

The TALENT ZOO trademark was created in 1998 and has been in continuous use by Talent Zoo since then.

14.

Before adopting the TALENT ZOO trademark, Plaintiff was called "WORK."  Plaintiff changed its name to Talent Zoo in 1998 in order to help differentiate itself from others in the job search, placement, and recruiting industry.

15.

After creating the unique and distinctive mark TALENT ZOO for the job search and recruiting industry, Talent Zoo sought and obtained a federal trademark registration for TALENT ZOO from the United States Patent and Trademark Office and obtained Trademark Registration No. 2320739.

16.

On February 28, 2005, Plaintiff filed Section 8 and 15 Affidavits for the registration of its TALENT ZOO trademark and it is now an incontestable mark under 15 U.S.C. § § 1058 and 1065.

17.

Talent Zoo is a unique name for a company in the job searching, placement, and recruiting industry.

18.

Under the law, the name "Talent Zoo" is considered "fanciful" for the market in which it operates.

19.

The name "Talent Zoo" is unique and distinctive in the job searching, placement, and recruiting industry, in part, because of the use of the word "Zoo."

20.

Job searching, placement, and recruiting firms do not commonly use or incorporate the word "zoo" in their names.

21.

Talent Zoo operates an interactive website under the mark TALENT
ZOO using the domain name www.talentzoo.com.

22.

Talent Zoo's website has been named "Best of the Web" by *Forbes* in
the "Job Hunting – Specialty" category in its prestigious ranking of
websites. *See* attached Exhibit A.

23.

The Talent Zoo website is the main source of communication
between Talent Zoo and individuals searching for job opportunities
primarily in advertising, marketing, and public relations, as well as seeking
employment advice and industry news, events, and opinions.

24.

The Talent Zoo website is also a primary source of communication
between Talent Zoo and businesses seeking to identify and hire new
personnel.

25.

A true and correct copy of a portion of Talent Zoo's website illustrating Talent Zoo's use of its mark is attached as Exhibit B.

26.

Since adopting the TALENT ZOO mark, Talent Zoo has heavily advertised and promoted the mark.

27.

Talent Zoo's advertising and promotional activities have included internet advertising, promotional items, media advertising, the creation of a forum for industry news on its interactive website, sponsorship of parties, seminars, and recruiting and job placement events, all of which have featured the TALENT ZOO mark.

28.

Since 1998, Talent Zoo has spent hundreds of thousands of dollars advertising and promoting its business under the TALENT ZOO mark.

29.

Talent Zoo has established a valuable reputation and developed substantial goodwill in the TALENT ZOO mark.

30.

Talent Zoo's name and mark are distinctive and well-known.

31.

Talent Zoo is well known and well recognized in the job search and recruiting industry.

32.

Numerous articles identifying and referencing Talent Zoo and the TALENT ZOO Mark, including those appearing in *The New York Times, The Wall Street Journal, The Atlanta Journal-Constitution, The Miami Herald, The Dallas Morning News, Kiplinger Business Forecasts, Adweek,* and *Advertising Age,* just to name a few, attest to the recognition of Talent Zoo.  Copies of several of these articles are attached as Exhibit C.

33.

Talent Zoo's business has grown dramatically since 1998.

34.

Since 1998, Talent Zoo has placed tens of thousands of professionals in employment.

35.

The TALENT ZOO mark serves to identify and distinguish the business and services of Talent Zoo from those of others and to indicate the unique source, origin, sponsorship, and affiliation of Talent Zoo services.

36.

As confirmation of this success, Talent Zoo delivered over 2.2 million impressions of its website bearing the TALENT ZOO Mark in July, 2005, it receives approximately 50,000 unique visitors to its website each month, and it sends out e-mail newsletters each week to 50,000 subscribers.

37.

By virtue of its website, significant advertising, and significant media and customer recognition, the TALENT ZOO mark has become famous for the services offered by Talent Zoo.

### Federal Protection of Talent Zoo's Trademark

38.

A trademark is a form of property.

39.

In February 2000, the United States Patent and Trademark Office issued Talent Zoo a federal service mark registration on the principal register for its TALENT ZOO mark, Registration No. 2320739. This registration evidences Talent Zoo's exclusive rights to use its TALENT ZOO mark throughout the United States.

40.

On February 28, 2005, Talent Zoo filed its Combined Declaration of Use and Incontestability with the United States Patent and Trademark Office.

41.

Plaintiff's federal registration for TALENT ZOO is incontestable pursuant to 15 U.S.C. § 1065.

**The Prior Infringement Lawsuit Against WorkZoo.com**

42.

Talent Zoo was the first recruiting and job search business operating in the United States under a name or mark that includes the word, "Zoo."

43.

After the U.S. Patent and Trademark Office granted Talent Zoo's federal service mark registration for its TALENT ZOO mark in February 2000, ZipTree, Inc., now known as WorkZoo.com, started doing business under the name WorkZoo.

44.

A search of the public records of the United States Patent and Trademark Office website prior to WorkZoo.com's adoption of its "WorkZoo" mark on its website would have identified Talent Zoo's existing use of the TALENT ZOO mark.

45.

WorkZoo.com operates an interactive job search website at www.workzoo.com using the mark "WorkZoo."

46.

Except for the subsequent entry of WorkZoo.com, Talent Zoo

remains the only recruiting and job search business operating in the United

States under a name or mark that includes the word, "Zoo."

47.

On April 26, 2005, Talent Zoo filed suit against WorkZoo.com in the

U.S. District Court for the Northern District of Georgia, Atlanta Division,

for, *inter alia*, WorkZoo.com's infringement of the TALENT ZOO Mark

based on the confusing similarity of its mark "WorkZoo."

48.

That suit, styled *Left, Inc. d/b/a Talent Zoo v. Workzoo.com f/k/a Ziptree,*

*Inc.*, Civil Action No. 1:05-CV-01097 (RLV) (the "Prior Lawsuit"), asked the

Court to order WorkZoo.com to stop using the "WorkZoo" mark including

the word "Zoo" in its name, specifically seeking protection under federal

and state trademark and fair trade laws, and also asked for actual and

punitive damages.

49.

Talent Zoo alleged, among other things, in the Prior Lawsuit, that by also using the word "Zoo" in its branding, WorkZoo.com made the mark TALENT ZOO less unique and distinctive in its marketplace.

50.

The words "work" and talent" are similar. The word "talent" is often associated with work -- we speak of whether a person is talented often in connection with their work or profession. The word "work" is a synonym for "employment." The word "talent" can imply employment. Talent agencies are often seeking to employ individuals or find or identify individuals to be employed by others. Owing to this similarity, Talent Zoo's original name was "WORK." In creative professions, employment agencies are commonly referred to as talent agencies.

51.

On August 4, 2005, Talent Zoo and WorkZoo entered into a confidential Settlement Agreement and Mutual Release (the "Settlement Agreement") that protected Talent Zoo's TALENT ZOO Mark and ended

the dispute as between them. Jobster specifically refused to enter into the Settlement Agreement.

52.

On August 11, 2005, Talent Zoo, pursuant to the settlement agreement, dismissed with prejudice its claims against WorkZoo.com, and on August 12, the Court Clerk entered the dismissal and closed the case.

### Jobster and its Infringement of the TALENT ZOO Mark Through the Use of the "WorkZoo" Mark.

53.

Jobster is a job recruiting and networking site that operates an Internet website located at www.jobster.com.

54.

Jobster is headquartered in Seattle, Washington and has offices throughout North America.

14

55.

Upon information and belief, Jason Goldberg, Jobster's CEO, founded Jobster in or around February 2004, four years after Talent Zoo's federal registration issued for the TALENT ZOO mark.

56.

Jobster made its public, on-line launch in or around March 2005.

57.

In March 2005, Jobster announced that around 40 companies, including Atlanta-based Coca Cola Company, were "piloting" Jobster.

58.

Jobster publicly claims to have more than 100 clients, including Boeing, Starbucks and Expedia, as well as Atlanta based companies The Southern Company and Earthlink.

59.

A listing of the companies, including Atlanta firms, who are using Jobster appears on Jobster's website under the "Company Info/Our Customers" links. *See* attached Exhibit D.

60.

The Jobster website is the main channel or source of communication between Jobster and companies searching for professionals and individuals searching for job opportunities.

61.

Both Jobster and Talent Zoo have decided to have a presence on the worldwide web through creation of their respective websites. A presence on the worldwide web is a critical way for Jobster to call attention to itself and to broadcast its existence to the public. The same is true for Talent Zoo.

62.

Upon information and belief, Jobster has contractual relations with companies located in Georgia, including within this judicial district in Atlanta, and helps place persons in employment in Georgia.

63.

Upon information and belief, companies, including Georgia firms, seek to hire professionals using Jobster's website and referral system and they use such system to publish and distribute on-line campaigns to target employee prospects, including candidates located in Georgia.

64.

Professionals, including residents of Georgia, can use Jobster's website to sign up to receive more information from Jobster about its employment referral system and career opportunities.

65.

On or about July 12, 2005, before Talent Zoo and WorkZoo.com reached a final settlement, Jobster announced with great public fanfare that

it is moving to expand its base in the online-recruiting industry by acquiring WorkZoo.com.

66.

As part of that publicity, Jobster modified its web homepage at www.jobster.com to prominently highlight its acquisition of WorkZoo.com.

67.

Jobster's prominent announcement of its acquisition of WorkZoo.com on the Jobster web home page is set apart in a box and highlighted in bold yellow, blue and orange type face as follows:



*See* attached Exhibit E.

68.

Upon information and belief, Jobster has not in fact merged with WorkZoo.com and Jobster does not know when the merger will be closed, if ever.

69.

In making prominent use of the "WorkZoo" mark, Jobster intends to create an association by the public between Jobster and WorkZoo.com.

70.

Pursuant to 15 U.S.C. § 1057, Jobster had constructive notice of Talent Zoo's use and registration of the TALENT ZOO mark before it started using "WorkZoo" as a mark in the United States.

71.

Upon information and belief, Jobster's acquisition of WorkZoo.com will add a new feature — job listings — to Jobster's model, which had been geared mostly toward employers and headhunters seeking employees through online referrals and social networking.

72.

Upon information and belief, with the addition of WorkZoo.com's Web crawler, which culls listings from other online boards, job seekers will be able to view postings from a variety of sources and get a referral to someone at the company.

73.

Upon information and belief, the listings on Jobster's website will have an interactive map noting a job's location -- for example in Fulton County, Georgia -- a feature currently on WorkZoo.com's site.

74.

Jobster's infringement, including its prominent and unauthorized use of the "WorkZoo" mark on its website has the potential to, and in fact does, direct consumers to Jobster's website.

75.

When an Internet user, for example, types in the search term "WorkZoo" in both the Google and Yahoo Internet search engines, the

www.jobster.com website and the www.jobster/blogs.com website appear respectively on the results pages.  *See* attached Exhibit F.

76.

Jobster's use of the WORKZOO mark has already caused actual mistake, confusion or deception of the general public.

77.

Consumers, for instance, who have learned of Jobster's announced acquisition of WorkZoo.com have believed instead that Jobster was actually acquiring Talent Zoo.

78.

Talent Zoo, as the legitimate trademark owner is entitled to control both the use of the TALENT ZOO mark and the quality of the goods to which it is affixed.

79.

In an attempt to avoid unnecessary litigation against Jobster, counsel for Talent Zoo on or about July 12, 2005, requested that Jobster be part of the settlement agreement between Talent Zoo and WorkZoo.

80.

Jobster, however, refused to be a signatory to, or immediately assume the requirements of, the settlement agreement or to enter into a separate agreement with Talent Zoo.

81.

Talent Zoo currently has no control over Jobster's continued and unauthorized use of the confusingly similar "WorkZoo" mark.

82.

Even if Jobster completes its acquisition of WorkZoo, which is still far from certain as to occurrence or date, Talent Zoo currently has no contract with, or other legal guarantee from, Jobster that will protect the TALENT ZOO mark.

83.

Jobster, to date, has not discontinued or otherwise imposed limits on its use of the name and mark "WorkZoo" or any other name or mark that includes the term "Zoo."

84.

Jobster has not agreed to cease using the WorkZoo.com domain name after its acquisition or WorkZoo.

85.

Jobster continues to use the name and mark "WorkZoo" prominently in press releases, recruiting, and marketing relating to the acquisition of WorkZoo.com.

86.

Thus, despite Talent Zoo's settlement with WorkZoo.com, Jobster continues to capitalize on the substantial goodwill which Talent Zoo has in its TALENT ZOO mark.

87.

Defendant's continuing use of the "WorkZoo" name constitutes a deliberate, knowing, and willful infringement of Talent Zoo's statutory and common law rights in its TALENT ZOO mark.

### Jobster's Inadequate Disclaimer of Affiliation with Talent Zoo

88.

Jobster recently added a disclaimer on its website that states: "WorkZoo is not affiliated with TalentZoo." This disclaimer, which is hidden in the footer of Jobster's homepage at www.jobster.com, appears in its original font and type face as follows:

© Copyright 2005. All Rights Reserved. WorkZoo is not affiliated with TalentZoo.  Jobster Privacy Commitment

89.

Jobster's simple "not affiliated" disclaimer language is ineffective.

90.

The disclaimer, which appears only in the footer of Jobster's homepage, is small, contained in fine print, and in a substantially smaller font than Jobster's more prominent placement of the "WorkZoo" mark and its announcement that "Jobster is teaming up with WorkZoo," which appears more prominently higher on Jobster's home page.

91.

The layout and design of Jobster's home page is such that the WorkZoo mark and the announcement that "Jobster is teaming up with WorkZoo" does not appear on a typical Internet user's computer screen at the same time as the disclaimer.

92.

The disclaimer in the footer is also in the same font and black typeface as, and sandwiched between and hidden by, the legal verbiage "Copyright 2005. All Rights Reserved" and "Jobster Privacy Commitment."

93.

Jobster has therefore placed the disclaimer in a location and in a manner where the Internet user is unlikely to see it.

94.

Jobster's disclaimer also does not contain a hyperlink on which Internet users can click to be immediately redirected to the www.talentzoo.com web site.

95.

Nor does Jobster's disclaimer appear on any other pages of Jobster's website.

96.

The disclaimer, for example, is noticeably absent from Jobster's "News & Events" web page where Jobster prominently features headlines from, and through hyperlinks directs Internet users to three news media touting Jobster's announcement of its acquisition of WorkZoo.  A copy of Jobster's "News & Events" page is attached as Exhibit G.

97.

Thus, Jobster's disclaimer disavowing affiliation with Talent Zoo read by an Internet user after reaching the www.jobster.com web site comes too late, does not effectively inform consumers that WorkZoo and Jobster are not affiliated with Talent Zoo, and does not remedy the confusion created by Jobster's infringing use of the WorkZoo mark to promote its own services.

98.

Notwithstanding the current disclaimer, relevant consumers are likely to believe falsely that the services offered by Talent Zoo and Jobster are affiliated and that Talent Zoo is merging with Jobster.

### COUNT ONE
### Infringement of Talent Zoo's Trade Name
### and Registered Trademark

99.

Talent Zoo re-alleges and incorporates the preceding paragraphs.

100.

In violation of Section 32(1)(a) of the Lanham Act, 15 U.S.C.
§ 1114(1)(a), Jobster's adoption and use of the "WorkZoo" mark is likely to
cause confusion or to cause mistake, or to deceive, and constitutes an
infringement of Talent Zoo's federal service mark rights in its TALENT
ZOO incontestable registered service mark.

101.

Jobster's actions have caused, and unless preliminarily and
permanently enjoined by the Court, will continue to cause irreparable
harm to Talent Zoo and to its business for which there is no adequate
remedy at law.

102.

Talent Zoo is entitled to recover from Jobster all damages it has and
may later sustain due to Jobster's improper conduct, and Jobster's profits
obtained from its infringing conduct, in an amount to be proved at trial
and to be trebled, pursuant to 15 U.S.C. § 1117.

103.

The actions of Jobster have been willful and deliberate and amount to

exceptional circumstances, justifying an award of attorneys' fees to Talent

Zoo pursuant to 15 U.S.C. § 1117.

## COUNT TWO
### False Description and False Designation of Origin
### in Violation of 15 U.S.C. § 1125(a)

104.

Talent Zoo re-alleges and incorporates the preceding paragraphs.

105.

Jobster's use of the "WorkZoo" mark has caused and is causing a

likelihood of confusion, mistake or deception as to the source, origin,

sponsorship, or approval of the services of Talent Zoo and of Jobster, in

violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

106.

Jobster's  use of the "WorkZoo" mark falsely suggests an affiliation

or connection with, or sponsorship or approval of, Jobster and its services

by Talent Zoo, and/or of Talent Zoo and its services by Jobster, in violation of 15 U.S.C. § 1125(a).

107.

The actions complained of herein have caused and, unless preliminarily and permanently enjoined by the Court, will continue to cause irreparable harm to Talent Zoo and to its business for which there is no adequate remedy at law.

108.

Talent Zoo is entitled to recover from Jobster all damages it has and may later sustain due to Jobster's improper conduct, and Jobster's profits obtained from its infringing conduct, in an amount to be proved at trial and to be trebled, pursuant to 15 U.S.C. § 1117.

109.

The actions of Jobster have been willful and deliberate and amount to exceptional circumstances, justifying an award of attorneys' fees to Talent Zoo pursuant to 15 U.S.C. § 1117.

## COUNT THREE
## Federal Trade Services Mark Dilution

### 110.

Talent Zoo re-alleges and incorporates the preceding paragraphs.

### 111.

By virtue of Talent Zoo's significant promotion, advertising, and use of its distinctive TALENT ZOO mark, and as evidenced by the significant sales and distribution of services identified by the TALENT ZOO mark, the TALENT ZOO mark has achieved fame with the relevant public as identifying services originating solely from Talent Zoo.

### 112.

Jobster's conduct detailed herein has caused and is continuing to cause a dilution of the distinctive quality of the TALENT ZOO mark, thereby diluting the distinctiveness and value of the mark in violation of the Federal Trademark Dilution Statute, 15 U.S.C. § 1125(c).

### 113.

Jobster's actions complained of herein have caused and, unless preliminarily and permanently enjoined by the Court, will continue to

cause irreparable harm to Talent Zoo and to its business for which there is no adequate remedy at law.

114.

Talent Zoo is entitled to recover from Jobster all damages it has and may later sustain due to Jobster's improper conduct, and Jobster's profits obtained from its infringing conduct, in an amount to be proved at trial and to be trebled, pursuant to 15 U.S.C. § 1117.

115.

The actions of Jobster have been willful and deliberate and amount to exceptional circumstances, justifying an award of attorneys' fees to Talent Zoo pursuant to 15 U.S.C. § 1117.

**COUNT FOUR**
**Common Law Service Mark Infringement**

116.

Talent Zoo re-alleges and incorporates the proceeding paragraphs.

117.

Talent Zoo has prior and exclusive rights to use its mark to identify, market, and promote its job search, placement, and recruiting services.

118.

Jobster's use of the "WorkZoo" mark has caused and is causing, a likelihood of confusion, mistake or deception, and therefore infringes the TALENT ZOO mark in violation of the common law of Georgia.

119.

Jobster's actions complained of herein have caused and, unless preliminarily and permanently enjoined by the Court, will continue to cause irreparable harm to Talent Zoo and to its business for which there is no adequate remedy at law.

120.

Talent Zoo is entitled to recover its damages sustained due to Jobster's improper conduct, in an amount to be proved at trial.

## COUNT FIVE
## Violation of the Georgia Trade Practices Act

### 121.

Talent Zoo re-alleges and incorporates the preceding paragraphs.

### 122.

By reason of the foregoing, Jobster has engaged in acts which have caused, and which will continue to cause, a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of services.

### 123.

By reason of the foregoing, Jobster has engaged in acts which have caused and which will continue to cause a likelihood of confusion or misunderstanding as to the affiliation, connection, or association with or certification by another.

### 124.

Jobster's conduct constitutes unfair and deceptive trade practices in violation of Georgia law, including the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq.*

125.

Jobster's actions complained of herein have caused and, unless preliminarily and permanently enjoined by the Court, will continue to cause irreparable harm to Talent Zoo and to its business for which there is no adequate remedy at law.

126.

Talent Zoo is entitled to recover its attorneys' fees and costs incurred in connection with this action.

## COUNT SIX
### Georgia Service Mark Dilution

127.

Talent Zoo re-alleges and incorporates the preceding paragraphs.

128.

Jobster's conduct has caused, and is continuing to cause, a likelihood of injury to the business reputation of Talent Zoo and/or of a dilution of the distinctive quality of the TALENT ZOO mark, thereby diluting the distinctiveness and value of that mark in violation of O.C.G.A. § 10-1-451(b) and Georgia common law.

129.

Jobster's actions complained of herein have caused and, unless preliminarily and permanently enjoined by the Court, will continue to cause irreparable harm to Talent Zoo and to its business for which there is no adequate remedy at law.

130.

Talent Zoo is entitled to recover its damages sustained due to the Defendant's improper conduct, in an amount to be proven at trial.

WHEREFORE, by virtue of the infringing and unlawful conduct of Jobster as alleged in this Complaint, Talent Zoo respectfully prays that the Court:

1.    Award judgment to Talent Zoo and against Defendant on all counts of the Complaint;

2.    Preliminarily and permanently enjoin Defendant, together with its agents, employees, subsidiaries, affiliates, and assigns, from:

      (a)    using the "WorkZoo" mark, or any other marks that include the word "Zoo," or any other colorable or similar imitation of the TALENT ZOO mark, in connection with

the operation of its businesses in the United States or in connection with the sale, offering for sale, promotion, marketing or advertising of any job search, placement, or recruiting services in the United States;

(b)     otherwise infringing upon the TALENT ZOO mark; and

(c)     otherwise unfairly competing with Talent Zoo, trading off of Talent Zoo's reputation or goodwill, or injuring Talent Zoo's business reputation in any manner whatsoever;

3.     Require Defendant and its subsidiaries and affiliates to take prompt, affirmative action within thirty (30) days to:

(a)     withdraw from the pubic and destroy any advertisements or promotional materials which contain or use the "WorkZoo" mark or any similar marks in relation to their businesses done in the United States;

(b)     file an affidavit with the Court confirming that these actions have been taken;

4.    Award Talent Zoo compensatory damages sustained due to Defendant's unlawful and infringing conduct, and all profits derived by Defendant from its unlawful and infringing conduct, in an amount to be proved at trial and to be trebled;

5.    Award Talent Zoo recovery of its reasonable attorneys' fees and costs of prosecuting this action;

6.    Grant such other, further, and different relief as the Court deems just and equitable; and

7.    Order a trial by jury on all appropriate issues.

TROUTMAN SANDERS LLP

John M. Bowler
Georgia Bar No.:  071770
Michael D. Hobbs, Jr.
Georgia Bar No.:  358160

5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia  30308
Telephone:   404-885-3000
Facsimile:    404-885-3900

MARC B. HERSHOVITZ, P.C.

*by [signature] with express consent*

Marc B. Hershovitz
Georgia Bar No.:  349510

3390 Peachtree Road
Suite 1000
Atlanta, GA 30326
Telephone:   404-262-1425
Facsimile:    404-262-1474

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| LEFT, INC. d/b/a TALENT ZOO, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. _____ |
| | ) | |
| JOBSTER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFICATION

Personally appeared before the undersigned officer duly authorized to administer oaths, Rick Myers, who, after first being duly sworn, deposes and says that he is the President of Talent Zoo, and that the facts set forth in the foregoing Verified Complaint are true and correct to the best of his knowledge and belief.

This ___ day of August, 2005.

_____
RICK MYERS

Sworn to and subscribed before
me this 19th day of August, 2005.

_____
Notary Public

Notary Public, Cherokee County, **Georgia**
My Commission Expires October 21, **2007.**